Good morning, Your Honors. David Zuckerman representing Timothy Mitchell. I'd like to reserve five minutes, if I may, for rebuttal. You understand that's something you have to keep track of. We don't, and we give you the business regardless of whether you get there or not. I appreciate that. Your Honors, this case reminds me of the movie Casablanca. There's this scene where the local police chief pretends that he is shocked, shocked, to hear that there is illegal gambling in Rick's Casino. And, of course, the audience knows that the same police chief has condoned and even participated in the gambling. In fact, at the moment Claude Raines says that, they bring him his winnings. Your winnings, sir, yes. I see the court knows the movie better than I do. Well, that part of the court does. The defense theory in this case was essentially the same. Mr. Mitchell engaged in a drug transaction that technically violated the rules of his informant agreement with the Seattle Police Department. In theory, he wasn't supposed to engage in any transaction of any kind without prior approval. But he testified that that provision was not strictly enforced and that Detective DeJesus knew full well and accepted the fact that Mr. Mitchell needed to be able to engage freely in drug transactions as they came about because otherwise he would have no credibility as an informant. And by all accounts, Mitchell was a very good informant. Detective DeJesus was pleased with his work, extended his contract several times, and in particular wished Mitchell to set up a deal with a particular drug dealer, Tova Weiss. And when Mitchell was arrested in this case, it was in the course of a deal with Tova Weiss. Admittedly, Mitchell did not obtain prior authorization as the written contract said he needed. But DeJesus himself testified that initially he wasn't intending to arrest Mitchell. He was just considering extending the contract to include this. There was one problem. Unbeknownst to Mitchell or Detective DeJesus, the DEA had already arrested Tova Weiss. They were after her, too. And when she did that deal with Timothy Mitchell, it was as part of her cooperation with the DEA. The defense theory was that this put DeJesus in a very difficult position. In the face of the DEA knowing exactly what had gone on, he had to make a show of doing things by the book. I'd like to turn then to the first issue in this case, which is one of first impression. When we turn to that first issue, let me ask you a question first off. You haven't pled a constitutional error in this particular matter, have you? Regarding the use of the emissions? Yes. I have not pled that, Your Honor. So it's a non-constitutional error. So in that instance, it's an abuse of discretion standard that applies. Would you agree? I don't. I believe this is- Well, if it's non-constitutional, the admission of evidence is certainly an abuse of discretion. It can be, Your Honor. But in certain situations, there is simply, as a matter of law, the court may decide that as a matter of law, a certain form of evidence simply can never come in, as is the case- Well, that would suggest that somebody like Congress or somebody else ought to put together a rule like Rule 410 that says it. Now, if you are successful in suggesting this is a Rule 410, exactly like Rule 410, I guess one can go there. But in that instance, even if the district court allowed it in, even given Rule 410, it's still an abuse of discretion and would be subject to harmless error, would it not? Well, I think there are two questions there, Your Honor. I'd like to answer both. First, it's true that today we have Rule 410, but that came about as a result of case law, first from the U.S. Supreme Court in Kercheval and then some other decisions like Spitaleri. So it initially was decided as a matter of case law that withdrawn pleas could not be used. We have no case law- But if, in fact, it had been used prior to that, it would still be just that the district court abused its discretion. Well- And then is there harmless error here? That's the standard. Once the law was- Given that there is an absolute rule in view of Kercheval against the use of a withdrawn plea, I don't see how it could simply be looked at as an abuse of discretion standard after that. There are all kinds of rules of evidence that sometimes district courts get wrong because they see it one way or see it another. And if they don't follow the rule, we say, you abused your discretion by not following the rule. And then we say, is it harmless error what they did? Well, I do agree that a harmless error standard may apply. But when there is or should be an absolute barrier to a certain kind of evidence, I don't see that it's abuse of discretion. It's not as if you're dealing with a relevance question, let's say, where there's some judgment call involved. But I could go on to why it's not harmless in this case if the court wishes. Well, I guess that may be a good place because if, in fact, why isn't it harmless error here, given the evidence that's in the record? Well, first, as I suggested, there was a plausible theory of defense here. I mean, a plausible theory of defense is, as Mr. Mitchell testified, that, in fact, he was authorized to engage in this transaction. He was not saying, as I understand it, that he didn't engage in a drug transaction. He was saying, I was authorized to do so. Absolutely. Which, of course, would have been harmless error. Well, I'm not, I don't reach, I don't see the connection there. Because, of course, that would be, that would have been a defense to the supervised release violation as well, that he had not committed a drug crime, but, in fact, was properly behaving as an informant under the rules of an informant contract. So, by the same token, he, and, in fact, the prosecutor used his admissions to the supervised release to convince the jury that he was not authorized to engage in these drug transactions as part of his informant work. And it was not a small part of the government's case. I mean, this came up in opening statement, in the conclusion of their case in chief, with very detailed testimony from the probation officer, and in cross-examination of Mr. Mitchell himself. Suggesting that, why in the world would he have admitted these things if, in fact, he was authorized to have done it? As far as the law on this, I believe that the same rationale for ER-410 should apply here. There are two reasons for that rule. The first is that... So, if you say that, how do you get around Hill and Seagal? When it says an admission to probation violation does not equal a guilty plea. And I apologize, Your Honor, for not knowing the holding of that case off the top of my head. Oh, I was... There's two cases, US v. Hill and US v. Seagal. And holding that they are not equivalent, but for what purpose? Because, as I understand, there's never been a case discussing, any case discussing, whether a withdrawn admission can be used as evidence. And I apologize for not knowing those cases off the top of my head, but perhaps their case is talking about how there are different protections or different standards for taking a plea versus taking a... You agree with Morrison v. Brewer that supervised release hearings are different than regular criminal proceedings, correct? Absolutely, and I think... You don't have the procedural safeguards. You only need a preponderance of the evidence. In fact, the evidence rules don't even apply. And I think that cuts in favor of Mr. Mitchell. The fact is there is much less protection at a supervised release hearing, much less protection against an improvident admission of a violation. You get a lot more warnings before you plead guilty. You get a lot more careful advice from your lawyer before you plead guilty. Nevertheless, if a judge finds grounds to withdraw that plea, it can't be used. It's much easier to mistakenly or improvidently admit to violations at a supervised release hearing, since it is such an informal procedure, and the defendant may not realize the consequences. He may feel that, well, I'll throw myself on the mercy of the court. That will make it perhaps then the judge, the judge in his discretion, will decide not to revoke my release but give me a second chance. There is no indication here that anyone warned Mr. Mitchell, you admit to these things, they're going to be used against you. That's going to be used against you in some very serious criminal charges. When he admitted the conduct that related to the violation of his supervised release conditions, did he tell the court that he had done those things because he thought he was authorized to do so? I don't think it came up one way or the other. So the answer is no? Correct. And what's your best case for Rule 10, applying to supervised release revocation proceedings? Well, as I said, there is none directly on point, but I think the two cases cited by the drafters of Rule 410, Kershaval from the U.S. Supreme Court and Spitaleri from the New York courts, which give the rationale. I think the same rationales apply here. One, that you get no benefit from withdrawing a plea or an admission to supervised release if it can then be used against you, especially in this case because he got no benefit in either of the cause numbers. He was allowed to withdraw his admission, but that was then used to convict him of the crime, and then the conviction of the crime was the only thing then used to find him guilty of the supervised release violations. If I could, I'd like to change, and I'm eating into your time, so I don't know whether you want me to, but I'd like to change areas a little bit. It seems to me that the presentation of the copies of the documents from the U.S. Parole Commission and that particular issue dealing with that, it seems to me that the real issue is not whether the offense is a controlled substance offense, but whether he was in custody. Is that not the issue? True. So why is Taylor appropriate? Why do we need then, why can we not rely on whatever documents we find, whether judicially noticeable or not? All we're really looking for here is the custody, whether they were in custody at the time. We're not looking at whether there's a controlled substance offense or whether in a Taylor analysis the modified categorical equals the offense. We're not looking at that. All we're trying to find out was this guy in custody. But both points are equally important for deciding whether the career offender provisions apply. Not only must it be the correct type of offense, he has to be in custody within the last 15 years or it absolutely does not apply. So it's just as important a factor in deciding whether or not the career offender provisions apply. Perhaps I should save just a bit of time for rebuttal then. Thank you. Good morning. May it please the Court, Counsel, my name is Bruce Miyake and I represent the United States in this matter. In this appeal, Mr. Mitchell raises three issues, one regarding the admission of the withdrawn supervised release evidence against him. Two, the sufficiency of evidence and whether or not the government had proved that he was in custody at the time within the 15-year period, thereby qualifying him as a career offender. And three, whether or not the district court had authority to correct the sentence under Rule 35. With respect to the first issue, the admissions of supervised release, the defendant is asking this Court to create a new rule which would bar the admission into evidence of supervised release admissions which have been withdrawn. And he bases his argument on Federal Rule of Evidence 410. And there is absolutely no authority to support his position and we would ask the Court to reject that. The district court correctly found that Evidence Rule 410 applied only to guilty pleas and that supervised release admissions were not the functional equivalent of a guilty plea. And as this Court has noted in the questions to Counsel, there are different procedural rights. It's a different burden of proof. The defendant is not given a jury trial. It's a preponderance, as indicated, and therefore they're not treated the same. And as this Court indicated, then it becomes simply a matter of discretion. It is treated as any other extrajudicial admission and it becomes a matter of discretion. And in this case where the defendant was asserting a public authority defense, certainly a public authority defense in which the Court found that this, that the government had to prove that, disprove it beyond a reasonable doubt, it was not an abuse of discretion to allow the use of that admission. I'm trying to get a proper picture of what went on at trial. Mitchell took the stand at this trial? Yes, he did. And basically said, I was authorized to do this because I was working undercover? That's what he, that's the essence of what he testified to. And my understanding is that the business of the withdrawn admission and the supervised relief revocation proceeding came up in cross? No, it did not. Yes, it did come up in the cross. I did bring that up. But we also had brought it up in our case in chief as well. It was admitted earlier? It had been admitted earlier. All right. Thank you. That clears that up for me. Your Honor, even if there was error, as this Court has noted, it would be harmless. It would be hard to, I think, hard to find that the admissions of those withdrawn supervised release admissions more probably than not materially affected the verdict. As indicated, the defendant had asserted a public authority defense. The only issue at trial was whether or not he was authorized. He was not contesting that he possessed the drugs. He wasn't contesting that he even sold drugs. He was simply saying that based on the pattern of practice between him and Detective DeJesus, he thought that he was tacitly authorized to do so. And as I understand it, he made three different statements about what happened in this particular situation. That's right. At the time that he was arrested, when first confronted, he initially denied that he knew anything about a drug deal. When he was confronted and told that they had overheard the conversation between Ms. Weiss and himself setting up the deal, he changed his statement to say that he was a middleman, that the real source of the drugs had been tailing him and that's who the police should go after. When the police tracked down what turned out to be Urban Turkin and searched his house and when Mr. Turkin returned and told the police what had actually happened, they then confront him again. And at that point, he actually admits that, in fact, it was his deal and that he asked Mr. Turkin to shadow him because he was concerned about being robbed. Now, never once during that scenario did he ever say that this was work as an informant. He did raise the point that he was an informant, but he never once said that, oh, I'm working with Detective DeJesus and this is part of our work. In fact, when given the opportunity to speak with Detective DeJesus, the only thing he said was, hey, I'm sorry, I messed up, and he apologized profusely over the telephone. So based upon that, Your Honor, the evidence was overwhelming of his involvement in the offense as well as the fact that he was not acting as an informant at the time that he did this deal. Regarding the next issue, unless the court has any questions about that, the next issue is whether the district court properly relied upon the parole documents in resolving a factual issue on whether or not Mr. Mitchell was in custody for his 1980 and 1988 controlled substance offenses. And it's our position that when resolving factual issues such as that, the district court is not restricted to only judicially noticeable facts, as Mr. Mitchell is asking this court to find. In fact, the authority is against that. Section 6A.1.3 of the United States Guidelines authorized the court in resolving disputes to look at a wide variety of evidence without regard to its admissibility at trial. In fact, there are several cases which I have cited in my brief, United States v. Burns, where this court allowed the Secret Service agent's report to establish the loss amount. United States v. Marin Cuevas, where a computerized criminal history was used to determine a criminal history and a defendant's, and United States v. Shavaria Angel, where an uncertified copy of a judgment was allowed to be used to establish prior convictions. Isn't it also true that in this particular issue we're really reviewing the record for clear error? That's correct. And I don't think you can look at this record and say that. You look at the documents that were submitted that came from the parole board, and the information within those documents, which really wasn't contested, clearly established that Mr. Mitchell was in custody as of May 14, 1994, with respect to both the 1980 and 1988 conviction, and the district court found that. And I think there was ample facts to support his finding on that. Now, lastly, there is the issue of Rule 35. And I want to acknowledge that this issue is my fault. I failed to do the simple thing of merely referring to the guideline manual to make sure that the guideline range was correct. It's something that I do after this. I always do it. It's something that I normally would have done, but I didn't do it. And I apologize to Mr. Mitchell. I apologize to this court and the district court for my error in this. Had I done that, this whole issue would have been moot. But it's a mistake that we made, and it's our position that the district court, under Rule 35, had the authority to correct what was clearly an error, an error in the calculation of the guidelines. And this court has consistently found that errors in the calculation of the guidelines are such a significant procedural error that they are remanded for resentencing. In fact, this court will not even look at and evaluate a sentence for its substantive reasonableness, but rather send it back to make sure that the procedure that's used has been proper. And that's exactly what happened here. We discovered that it was an error. We notified the court, and the court then corrected it. And in using that, went through its calculus of the 3553 factors and came to its decision that 180 months was appropriate. And quite frankly, when I noticed this, I thought of maybe not notifying the court about this, but I felt that it was my obligation to make sure that the court was notified so that the record was clear and that there clearly was going to be an appeal in this matter. We weren't sure if the sentencing was going to be appealed at all, and at least the record would be clear for analyzing if this sentence was reasonable. If the court doesn't have any further questions, that's all I have. Thank you very much. I think you have a minute or so. Thank you. If I could just respond very briefly regarding the Rule 35 issue. I appreciate Mr. Miyake's concession here, but the fact that there was no objection initially from the prosecutor is really what controls this. Because a mistake in a guideline calculation does not result in automatic remand when there was no objection below. It has, as this court recently said in United States v. Autorey, it has to meet the plain error standard. And that includes, that means it must be an error that affects the party's substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. Well, certainly the government's substantial rights have not been harmed. Mr. Mitchell got the sentence Mr. Miyake recommended, and he recommended the same sentence both before and after the mistake came to light. Suppose in a hypothetical case there's a sentencing appeal and the defense prevails on a sentencing appeal, and it's remanded for resentencing. And at the remand resentencing, the district court discovers that the probation office, U.S. attorney, whomever, miscalculated the proper guideline range. The first time around. Yeah. Would the district court have the authority to rely upon the correct guidelines and enter a sentence appropriate with those guidelines? I didn't specifically research that, but my understanding is probably the case law permits virtually everything to be reopened at a resentencing. What's the difference? That's what I'm saying, is that probably the answer is yes. What's the difference with this case? Well, but the difference in doing it now or in doing it on a Rule 35 motion? Yeah. Well, there has to be. What's the difference? Well, in the scenario you posit, there has to be a valid basis for reversal and remand that before you can get to this sort of reconsideration of the grounds for sentencing. And clearly, Rule 35 is very strongly worded to say, you know, it's not just enough. It's not a chance to just reexamine things. It's not a chance to change your mind or even, you know, to correct necessarily to correct mistakes. I have one question about the admission at the revocation proceedings. Let's suppose there had been no ruling from the district court about the admissibility of those withdrawn admissions and your client had taken the stand and described his version of what happened. Is it your position the government could not have cross-examined based on the earlier admission? Given that I think the withdrawn guilty plea cannot be used under those circumstances, I would still say yes, they couldn't have used it. I do recognize that there are some areas of law in which certain statements of a defendant may be inadmissible in the case in chief, but then admissible in a cross-examination. Okay. Thank you. Thank you for your comments and your provision. Cases 09-30168 and 09-30169, United States v. Mitchell, are hereby submitted. We'll now turn to cases 09-30186 and 09-30187, United States v. Gypsy Lawson and Fran Ogren. We will note for the record that the government attorney is not present and has called in and said that her schedule was not appropriately put together, I guess, either her assistant or she made an error, and therefore she's not here today. She's on an airplane someplace.
judges: Goodwin, Hawkins, Smith N. R.